IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SUSAN L. OSTRANDER POLZIN,      )
       Plaintiff     )
       v.     )    No. 3:07-cv-127
        (Phillips/Shirley)
BARNA AND COMPANY, *et al.*,     )
       Defendants     )

## MEMORANDUM OPINION

This action arises out of the 2004 purchase of a log home package and related services for the home's construction by plaintiff Susan L. Ostrander Polzin, an Ohio attorney. Plaintiff has filed a forty-four page complaint against five Tennessee defendants and three Ohio defendants, alleging a total of thirty-eight causes of action, many of which are pursuant to various Ohio statutes [*see* Doc. 1]. As is apparent from the complaint, complete diversity between plaintiff and the defendants does not exist; rather, the sole basis for federal jurisdiction is set forth in Count XXXIV, which alleges violations of the Racketeer Influenced and Corrupt Organizations Act (civil RICO), 18 U.S.C. § 1962(c) [*see id.*, pp.38-40].

This matter is presently before the court on the following motions:

1. Motion to dismiss by defendants Barna and Company, Barna and Company, d/b/a Jim Barna Log Systems, and Log Home Builders, Inc. (the Barna defendants) [Doc. 19];

2. Motion to dismiss by defendants Bryan Mason and Bryan Mason, d/b/a Mason Construction [Doc. 21]; and

3. Motion to dismiss by defendants Eric Thompson, Karen Thompson, and Valley View Cabins, Inc. [Doc. 22].

The gist of defendants' motions is that the court should dismiss the civil RICO count and, after doing so, should decline to exercise supplemental jurisdiction over the other thirty-seven state law causes of action. The issues raised have been well briefed by the parties [*see* Docs. 20 and 23][1] so that this matter is now ripe for adjudication.[2] For the reasons that follow, defendants' motions will be granted, and this case will be dismissed.

I.

*Factual Allegations*

In order to analyze the allegations against all defendants in the context of a motion to dismiss filed pursuant to both Fed. R. Civ. P. 9(b) and 12(b)(6), the court will turn

---

[1]More accurately, the issues have been well briefed by plaintiff and the Barna defendants. The other defendants have sagaciously adopted the Barna defendants' brief [*see* Docs. 21 and 22].

[2]The court notes for the record that the Barna defendants have requested oral argument on their motion [*see, e.g.*, Doc. 19, p.1-2]. However, the court finds that oral argument would not be particularly helpful because of the superior quality of the briefs.

first to the factual allegations common to all counts and then to the specific allegations of the civil RICO count. Those verbatim factual allegations common to all counts are as follows:

> 13. In July of 2004, the Plaintiff purchased unimproved property at 7770 Sadie Thomas Road, Johnstown, Ohio to build a new residential home.
>
> 14. On July 10, 2004, the Plaintiff purchased a log home package, including the provision of a builder, from Barna and Company, Barna and Company dba Jim Barna Log Systems and/or its distributors Eric and Karen Thompson and Valley View Cabins, Inc.[3]
>
> . . .
>
> 16. As part of the consideration of the log home package, the Plaintiff also entered into a Technical Assistance Agreement with Log Home Builders, Inc.[4]
>
> . . .
>
> 18. The materials for the construction of the log home were delivered to the Property on October 12, 2004.
>
> 19. Pursuant to the Agreements between the Plaintiff and Log Home Builders, Inc., Log Home Builders, Inc., on its own behalf and on behalf of Barna and Company, chose Bryan Mason to build the log home purchased by the Plaintiff.

---

[3] A copy of the purchase agreement signed by plaintiff and her husband, Jeff Polzin, is attached as Exhibit A to the complaint [*see* Doc. 1-2]. Plaintiff's husband, however, is not a party to this litigation.

[4] A copy of the Technical Assistance Agreement dated September 7, 2004, is attached as Exhibit B to the complaint [*see* Doc. 1-3]. Although the Barna defendants represent in their memorandum that both plaintiff and her husband signed this Technical Assistance Agreement, the copy attached to the complaint reflects only the signature of plaintiff's husband [*see id.*, p.4].

20. Despite the written encouragement within the agreements for the Plaintiff to research the references of any builder, the Plaintiff was notified of the identity of Bryan Mason, Barna and Company's and Log Home Builders, Inc.'s chosen builder, a mere one business day prior to his arrival at the jobsite and one full week after the materials had been delivered to the jobsite.

21. The Plaintiff and Defendant Bryan Mason entered into a Builder's Agreement on October 18, 2004.[5]

. . .

23. The Plaintiff was newly informed by the Defendants that the "dry-in" of the home would be completed within 90 days from October 18, 2004, pursuant to the terms of the Builder's Agreement.

24. Bryan Mason walked off the jobsite without completing his obligations under the Builder's Agreement or even the services he had already been paid for.

25. As a result of continuous and constant breaches of the Purchase Agreement, the Technical Assistance Agreement, and the Builder's Agreement by the Defendants, the home was not completed until June 5, 2005.

26. The "dry-in" process was finally completed by a replacement builder.

27. Despite the Plaintiff's best efforts in the face of the myriad of breaches by the Defendants, problems continued with the construction of the log home after the "dry-in" process was completed, including, but not limited to, discovery of the use of defective and damaged materials provided by the Defendants, toxic mold infestation as a result of the delay in completing the

---

[5]A copy of the Builder's Agreement is attached as Exhibit C to the complaint [*see* Doc. 1-4]. Like the Technical Assistance Agreement, this agreement reflects only the signature of plaintiff's husband [*see id.*, p.3].

"dry-in process" and the negligent and/or materially deficient remediation instructions provided by the Defendants.

28. At all times all Defendants (hereinafter "the Barna Group") conspired together and aided and abetted each other to deprive the Plaintiff of the value of her purchase.

29. At all times during the building of the log home, the Barna Group acted in concert and as one entity.

30. Eric Thompson and Valley View Cabins, Inc. have breached the Purchase Agreement, by among other things, failing to provide contracted for materials, failing to provide undamaged materials and failing to replace damaged or defective materials.

31. Log Home Builders, Inc. has breached the Technical Assistance Agreement by failing to provide the services set forth in the Agreement.

32. The Barna Group, [sic] acted together as one entity for purposes of tortiously depriving the Plaintiff of her contractual and property rights.

33. The Barna Group, though constructed as separate legal entities, with regards to actions taken under and breaches of the Purchase Agreement, the Technical Assistance Agreement and the Builder's Agreement acted together as one entity for the purposes of tortiously depriving the Plaintiff of her contractual and property rights.

34. Notwithstanding representations by the Barna Group in their contracts, the Barna Group in fact conduct their business and their communications with their customers as a single integrated business without regard to their incorporation or other status. The Barna Group, in fact, make representations, promises and denials without regard to corporate or individual status or agency status. The Barna Group operate as if they have no knowledge of the representations made in their contracts and either knowingly or unknowingly mislead their customers and misrepresent their status and agency capacity. Any representation of separate legal capacity or status by the Barna

Group is deceptive, misleading and intended to create a legal fiction not supported by the facts surrounding the actual conduct of their business.

[*See* Doc. 1, pp.6-9]. In support of her civil RICO count of the complaint, plaintiff makes the following verbatim allegations :

. . .

265.  Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson, Bryan Mason and/or Bryan Mason dba Mason Construction, jointly and severally, knowingly engaged in a course of conduct that constituted a scheme or artifice devised with the specific intent to defraud consumers, including Plaintiff, and in carrying out this conduct knowingly used the United States mail and/or interstate telephone wire in furtherance of the scheme.

266.  Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson, Bryan Mason and Bryan Mason dba Mason Construction used the U.S. mail and interstate telephone wires on numerous occasions, at their places of business and otherwise, to continue to misrepresent, mislead and defraud Plaintiff, and upon which Plaintiff relied, directly causing Plaintiff increasing damages in her attempt to complete the construction of her log home.

267.  Defendants used the U.S. mail and/or interstate telephone wires to make misrepresentations to Plaintiff and forward their scheme on numerous occasions including, but not limited to, on or about [here, plaintiff lists 55 separate dates beginning on November 15, 2004, and ending on December 8, 2005].

268.  Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson,

Bryan Mason and Bryan Mason dba Mason Construction are each a "person" as defined in 18 U.S.C. § 1961.

269. Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson, Bryan Mason and Bryan Mason dba Mason Construction jointly and severally knowingly engaged in a course of conduct as an enterprise, as defined in 18 U.S.C. § 1961, in a series of more than two related fraud, mail fraud and wire fraud acts over a period of approximately three years and continue to do so, thus engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

270. Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson, Bryan Mason and Bryan Mason dba Mason Construction function through corporate structures and as a coherent group on a continuing basis.

271. On information and belief, Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson, Bryan Mason and Bryan Mason dba Mason Construction have engaged in the pattern of practices described herein with other consumers over a multiple year period and continue to do so.

272. Defendants Barna and Company, Barna and Company dba Jim Barna Log Systems, Log Home Builders, Inc., Valley View Cabins, Inc., Eric Thompson, Karen Thompson, Bryan Mason and Bryan Mason dba Mason Construction are employed by or associated with an enterprise that engages in interstate commerce.

273. As a direct and proximate result of Defendants' actions, Plaintiff suffered financial loss and other damages which she may recover pursuant to 18 U.S.C. § 1964(c), in addition to her litigation costs and reasonable attorney's fees.

>          274.    As a direct and proximate result thereof, Plaintiff is
> entitled to treble damages pursuant to 18 U.S.C. § 1964(c).

[*Id.*, pp.38-40]. To reiterate, all other allegations in this forty-four page complaint relate to the remaining thirty-seven causes of action pursuant to state law.

## II.

### *Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b)*

In Count XXXIV, plaintiff alleges that defendants violated 18 U.S.C. § 1962(c) by the commission of various fraudulent acts. In their pending motion, defendants first contend that this count of the complaint must be dismissed pursuant to Fed. R. Civ. P. 9(b) because it fails to set forth specific acts by them that constitute fraudulent behavior.

Rule 9(b) of the Federal Rules of Civil Procedure provides that in a complaint alleging fraud, "the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. AmeriTrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) (citations omitted). The Sixth Circuit interprets Rule 9(b)'s requirement "liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted). As further noted by

the Sixth Circuit, this liberal reading stems from the influence of Rule 8, which "requires a 'short and plain statement of the claim,' and calls for 'simple, concise and direct' allegations." *Michaels Bldg.*, 848 F.2d at 679. Nevertheless, even against Rule 8's "backdrop admonition of simplicity in pleadings," *id.*, "allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with sufficient factual basis to support an inference that they were knowingly made." *Coffey*, 2 F.3d at 162 (internal quotation marks and citations omitted).

It is beyond cavil that courts have applied the pleading standards of Rule 9(b) to RICO complaints. As one court has observed, "[w]ithout that insistence on specificity, the [RICO] Act is virtually limitless in its application." *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F. Supp. 1042, 1046 (D. Utah 1983). Otherwise, the "mere invocation of the statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute." *Taylor v. Bear Stearns & Co.*, 572 F. Supp. 667, 682 (N.D. Ga. 1983). Moreover, where mail fraud and wire fraud are alleged, as in the instant case, courts are particularly sensitive to these pleading requirements, requiring "specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994) (emphasis in original) (citations omitted).

9

Against this legal background, plaintiff's allegations against these defendants fall woefully short of the requirements of Rule 9(b) in the context of a civil RICO case. While plaintiff takes great pains in identifying the specific dates of fifty-five purported instances of mail and/or wire fraud in ¶ 267 of the complaint, she makes no allegations whatsoever as to which defendant sent a mailing or made a telephone call; in fact, she does not even identify whether each alleged incident was a mailing or a phone call. *See id.* Moreover, plaintiff has failed to illustrate how each of these fifty-five mailings or phone calls furthered the fraudulent scheme. *See id.* Under these circumstances, it would be impossible for any of these defendants to respond intelligently to this paragraph of the complaint in an answer.

This court is aware, of course, that an exception to the particularity requirement of Rule 9(b) exists when the relevant facts "lie exclusively within the knowledge and control of the opposing party ... ." *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 489 (6th Cir. 1990) (citation omitted). In such a case, pleading upon information and belief is permissible although the plaintiff "must plead a particular statement of facts upon which his belief is based." *Id.* (citation omitted). Consequently, a court should be reluctant to dismiss an action pursuant to Rule 9(b) when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted. *See Michaels Bldg. Co.*, 848 F.2d at 680.

In this case, however, plaintiff has failed to allege that defendants are in control of the various records which arguably comprise the basis of the allegations set forth in ¶ 267. On the contrary, given plaintiff's apparent knowledge of the specificity of the dates on which

the mailings or telephone calls occurred, plaintiff does in fact have total access to those records but, for whatever reason, has failed to articulate the particulars of those purported mailings or phone calls. Thus, the court finds that defendants' motions are well taken based on plaintiff's failure to comply fully with Rule 9(b) regarding these fraudulent allegations in the context of a civil RICO case. This court could, in its discretion, allow plaintiff a certain amount of time to amend the complaint to "flesh out" the particularities of those fifty-five purported incidents of mail or wire fraud; nevertheless, for reasons to be discussed shortly, plaintiff has a more fundamental problem with the allegations of this complaint in the context of a civil RICO action pursuant to 18 U.S.C. § 1962(c) so that the allowance of such an amendment would in effect be futile.

III.

*Motion to Dismiss Pursuant to Rule 12(b)(6)*

Defendants next contend that Count XXXIV of the complaint should be dismissed against them pursuant to Fed. R. Civ. P. 12(b)(6). Technically, a Rule 12(b)(6) motion does not attack the merits of the case; it merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 1364 at 340 (Supp. 1987). This court must construe the complaint in the light most favorable to the plaintiff, accept all her factual allegations as true, and determine whether this plaintiff can prove a set of facts in support of her claims that would entitle her to relief. *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001) (citation omitted).

This court may not, however, grant a Rule 12(b)(6) motion based on its disbelief of a complaint's factual allegations. *Id.* (citation omitted). Nevertheless, this court need not accept as true legal conclusions or unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citation omitted).

The Supreme Court has recently observed that "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and citation omitted). Plaintiff's factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. *Id.* at 1965. To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Id.* at 1969. It must be emphasized that the Supreme Court in *Twombly* dismissed plaintiff's antitrust-conspiracy complaint because it did not contain facts sufficient to "state a claim to relief that is *plausible* on its face." *Id.* at 1974 (emphasis added).[6]

---

[6]Considerable "uncertainty as to the intended scope of the Court's decision [in *Twombly*]" persists, however, particularly regarding its reach beyond the antitrust context. *Iqbal v. Hasty*, No. 05-5768-CV, __ F.3d __ , 2007 WL 1717803, at *11 (2nd Cir. June 14, 2007) (applying the plausibility standard in the context of a motion to dismiss plaintiff's § 1983 claims based on qualified immunity). The Second Circuit in *Iqbal* closely analyzed the text of *Twombly* and determined that it
>is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible "plausibility standard," which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.

## IV.

### *Section 1962(c) of Civil RICO*

Plaintiff alleges that the defendants have violated § 1962(c) of civil RICO which provides in part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ... .

18 U.S.C. § 1962(c). Thus, to state a civil RICO claim, plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Because the court concludes that the instant complaint lacks facts establishing a "pattern" of racketeering activity and thus fails to state a civil RICO claim, the court need not address any of the other RICO elements.

To establish a civil RICO violation under § 1962(c), plaintiff must allege that the RICO enterprise engaged in a "pattern" of racketeering activity consisting of at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. §

---

*Id.* (emphasis in original) *Iqbal* thus held that *Twombly*'s plausibility standard did not significantly alter notice pleading or impose heightened pleading requirements for all federal claims. Rather, *Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief. *See Iqbal*, 2007 WL 1717803, at *23 (determining that Iqbal's excessive-force claim -- premised on supervisor liability -- did not require Iqbal to plead "subsidiary facts" concerning the warden's knowledge because "it [was] at least plausible that a warden would know of mistreatment inflicted by those under his command"); *see also Collins v. Marva Collins Preparatory Sch.*, No. 1:05cv614, 2007 WL 1989828, at *3 n.1 (S.D. Ohio July 9, 2007) (noting that eight federal district courts in the Sixth Circuit have thus far applied *Twombly* in the manner described in *Iqbal*, while only one has restricted *Twombly* to the antitrust-conspiracy context).

1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail fraud statute (18 U.S.C. § 1341) and the wire fraud statute (18 U.S.C. § 1343), both of which are alleged in the instant case.[7] *See* 18 U.S.C. § 1961(1). However, *Sedima* instructs that a civil RICO plaintiff must do more than merely allege two predicate acts; that plaintiff must also satisfy the so-called "continuity plus relationship" test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong). *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989); *Sedima*, 473 U.S. at 496 n.14.

The court will focus solely on the continuity prong of this test in the instant case because the allegations supporting it, as will be demonstrated, are sorely lacking. The requirement of "continuity," or a threat of continuing criminal activity, insures that civil RICO is limited to addressing Congress' primary concern in enacting the statute, *i.e.*, long-term criminal conduct. *See H.J. Inc.*, 492 U.S. at 241-42. The Supreme Court has described continuity as either "close-ended," referring to a closed period of repeated conduct extending over a substantial period of time, or "open-ended," referring to past conduct "which by its nature projects into the future with a threat of repetition." *Id.* at 241. When a lawsuit is

---

[7]It must be noted that mail and wire fraud allegations "are unique among predicate acts" because multiplicity of such acts "may be no indication of the requisite continuity of the underlying fraudulent activity." *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990). Consequently, courts do "not look favorably on many instances of mail and wire fraud to form a pattern." *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990).

brought before plaintiff can show activity over a long period of time, the crucial showing is "whether the *threat* of continuity is demonstrated." *Id.* at 242 (emphasis in original).

A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. Here, plaintiff generally alleges mail and wire fraud acts over a period of approximately three years [*see* Doc. 1, p.40]; however, the specific predicate acts of mail and wire fraud cover only a period of less than thirteen months, *i.e.*, from November 15, 2004, through December 8, 2005 [*see id.*, p.39]. The court concludes, therefore, that the only events alleged by plaintiff which qualify as predicate acts under RICO involve this shorter time frame. *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.) (approving district court's exclusion of certain events alleged by plaintiff as not properly qualifying as predicate acts under civil RICO), *cert. denied*, 513 U.S. 1017 (1994). Although there are no hard and fast rules regarding what amounts to "a substantial period of time," racketeering activity lasting only "a few weeks or months and threatening no future criminal conduct" is insufficient. *Id.*; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 726 (6th Cir. 2006) (predicate acts over thirty months did not satisfy the closed-period analysis); *Vemco*, 23 F.3d at 134 (same over seventeen months). *Cf. Dana Corp. v. Blue Cross & Blue Shield*, 900 F.2d 882 (6th Cir. 1990) (continuity requirement satisfied when fraud occurred over the course of seventeen years).

The facts of *Vemco* are particularly instructive for purposes of the court's present analysis. In *Vemco*, the parties entered into a contract under which the defendant agreed to build a "paint finishing system" in the new facility of the plaintiff car-parts

manufacturer. 23 F.3d at 131. Displeased with the defendant's repeated demands for payment beyond that specified in the contract and defendant's performance under the contract, plaintiff brought suit alleging predicate acts of fraud and extortion and civil RICO. *Id.* at 131-32. The Sixth Circuit held that a single scheme emanating from a dispute over an ordinary construction contract did not possess the requisite RICO continuity:

> Vemco has alleged a single fraudulent scheme by Flakt to misrepresent a guaranteed price in a building contract, and later to extort a higher price from Vemco. The total scheme, from the time of contract negotiations until the last threat alleged, lasted only seventeen months. The goal of the 'single criminal episode,' as the district court accurately characterized it, was to get Vemco to pay the cost of *one* paint system. [¶] There are no facts pleaded suggesting anything but that once Flakt received the money it was requesting in billing statements, its scheme would be over, and it would end its association with Vemco.

*Id.* at 134-35 (emphasis in original).

Here, the court is confronted with a virtually identical situation. Plaintiff has alleged a single fraudulent scheme by defendants with respect to various misrepresentations and other fraudulent conduct regarding the sale of one log home package. The total scheme, according to plaintiff's more specific allegations,[8] lasted only thirteen months. The goal of the "single criminal episode" was to compel plaintiff to pay the full contract price for one log home package and the home's subsequent construction. Moreover, the court in *Vemco* was

---

[8]As previously discussed in this opinion, even these specific allegations fail to meet the requirements of Fed. R. Civ. P. 9(b).

16

not persuaded by the fact that there might have been several different forms of fraud alleged by plaintiff:

> We do not find that a defendant who engages in several different forms of fraud for a single purpose, to defraud a single victim through activities surrounding one construction project, without more, has engaged in more than one criminal scheme.

*Id.* at 135. Consequently, the instant plaintiff has come nowhere close to pleading facts which establish a "closed-ended" continuity.

Nor do plaintiff's allegations give rise to a proper pleading of "open-ended" continuity. A civil RICO plaintiff may still satisfy the continuity requirement when the criminal activity lacks the duration and repetition to establish continuity if plaintiff can show past conduct which "by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 242. Such a threat of continuity exists when the plaintiff can show (1) a "specific threat of repetition," (2) that the predicate acts or offenses are "part of an ongoing entity's regular way of doing business," or (3) that the defendant operates a "long-term association that exists for criminal purposes." *Id.* at 242-43. Here, plaintiff simply makes the bare allegation "[o]n information and belief" that the defendants "have engaged in the pattern of practices described herein with other consumers over a multiple year period and continue to do so." [Doc. 1, p.40]. This court is of the opinion, however, that such general allegations do not rise to the level of demonstrating an open-ended period of racketeering activity because there is no allegation of "a specific threat of repetition" to any other purchaser. *Id.* at 242. Plaintiff's allegations, at best, merely echo her belief that if this

fraudulent activity happened to her, then it probably has happened to someone else. But plaintiff has failed to allege that it did happen to any other specific individual or business entity. Furthermore, the "pattern of practices" alleged in this complaint does not specify the requisite level of criminal conduct; the only "pattern of practice" alleged in this complaint implies nothing more than that these defendants were doing business with other consumers using these same contracts, hardly a criminal undertaking based on the court's review of these very ordinary agreements.

In conclusion, this court finds itself in total agreement with the observations of the Seventh Circuit in *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992), in which it observed that the plaintiff in that case persisted in trying "to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." The Seventh Circuit further observed that, "[w]hile it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate ... , it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour." *Id.* (citation omitted). Additionally, the Seventh Circuit noted that, "[t]he widespread abuse of civil RICO stems from the fact that all modern business transactions entail use of the mails or wires - giving plaintiffs the jurisdictional hook - and the fact that RICO offers a far more generous compensation scheme than typically available in state court." *Id.* (citations omitted).

In this case, plaintiff has likewise attempted to convert a routine business dispute over the sale of one log home package into a civil RICO case. Under the facts

alleged in this complaint, the court will not allow plaintiff to do so, and defendants' motion to dismiss the civil RICO count of the complaint will be granted. In short, plaintiff has failed to state a civil RICO claim because this complaint does not contain facts sufficient to show entitlement to relief under 18 U.S.C. § 1962(c).

IV.

*All Remaining Counts*

The remaining counts against the defendants set forth causes of action under state law or under Ohio statutes. Because this court has dismissed plaintiff's only federal cause of action, this court will decline to exercise supplemental jurisdiction over plaintiff's state law claims against these defendants. *See* 28 U.S.C. § 1367(c)(3). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Hence, those claims will be dismissed without prejudice.

Order accordingly.

             *s/ Thomas W. Phillips*
             UNITED STATES DISTRICT JUDGE